**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**TAYR KILAAB AL GHASHIYAH,**
**Plaintiff,**

**v.** **Case No. 04-C-0176**

**WISCONSIN DEPARTMENT OF CORRECTIONS,**
**MATTHEW J. FRANK,**
**GARY R. McCAUGHTRY,**
**SUSAN WALLANTIN,**
**DANIEL BERTRAND, and**
**LIZ LEMERY[1],**
**Defendants.**

---

**DECISION AND ORDER**

Plaintiff Tayr Kilaab al Ghashiyah, who is currently incarcerated at the Waupun Correctional Institution, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. On September 30, 2004, he was granted leave to proceed in forma pauperis on claims that defendants violated his rights under the First, Fifth, Eighth and Fourteenth Amendments. Before me are the following motions: 1) defendants' March 22, 2005 motion to dismiss; 2) defendants' March 29, 2005 motion for summary judgment; 3) plaintiff's May 3, 2005 motion for summary judgment; 4) plaintiff's June 24, 2005 motion of objection; 5) defendants' September 9, 2005 motion for leave to file excess pages; and 6) plaintiff's September 20, 2005 motion of objection.

## I. PRELIMINARY MATTERS

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion to dismiss, I must focus on the pleadings of the parties. If

---

[1]Defendant Lemory's last name is correctly spelled "Lemery."

"matters outside the pleadings are presented to and not excluded by the court" in connection with a motion to dismiss for failure to state a claim, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b).

In this case, defendants have filed an affidavit in support of their motion. Defendants submit the affidavit of John Ray, who is employed as a Corrections Complaint Examiner (CCE) for the Wisconsin Department of Corrections (DOC). Defendants also submit Wisconsin Department of Corrections Inmate Complaint Review System (ICRS) grievance records in support of their motion. Thus, the motion to dismiss is properly treated as a motion for summary judgment. Further, pursuant to Civil L.R. 56.1 and 56.2 defendants provided plaintiff with the required notice and a fair opportunity to present counter-affidavits or other evidence in opposition to defendants' motion, thus my consideration of defendants' summary judgment motions is proper.

On summary judgment, the facts at issue must be established through documents that ensure reliability and veracity, such as depositions, answers to interrogatories, admissions and affidavits. Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir. 1985). A prisoner plaintiff can demonstrate the veracity of a complaint by swearing under penalty of perjury that his statements are true. See 28 U.S.C. § 1746. If the complaint is sworn, it will be treated as an affidavit at the summary judgment stage. Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996). Submissions which are unverified and unsworn cannot be considered affidavits for the purposes of summary judgment motions because these documents would not be admissible at trial. See Fed. R. Civ. P. 56 (c) and (e).

The facts are taken from plaintiff's affidavits of May 3, 2005 and September 20, 2005, as well as defendants' affidavits and supporting exhibits. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004) (stating that an inmate's verified response constituted competent evidence to rebut defendants' motion for summary judgment). However, plaintiff's unsworn complaint will not be considered as evidence. [2]

Finally, this order addresses plaintiffs' First, Fifth, Eighth and Fourteenth Amendment claims as described in my order of September 30, 2004. To the extent plaintiff raises additional claims in his May 3, 2005 affidavit,[3] I will not address them at this time. If plaintiff wishes to prosecute his additional claims, he may do so by filing a new civil rights complaint. I will first address defendants' motion for summary judgment for failure to exhaust. Then, I will address the parties' cross motions for summary judgment on the merits.

## II. FACTS

Plaintiff was incarcerated at Waupun Correctional Institution (WCI), Green Bay Correctional Institution (GBCI), Racine Correctional Institution (RCI), and Oshkosh Correctional Institution (OSCI) at all times relevant to this action. Defendants are all DOC employees: Matthew Frank is the DOC Secretary; Gary McCaughtry is the WCI warden;

---

[2]I note that plaintiff has indicated that prison officials refused to notarize several of his filings. However, it is not necessary for plaintiff to notarize a document for it to be considered as evidence. See Ford, 90 F.3d at 246. As discussed above, plaintiff can attest to the veracity of any document by declaring that it is true under penalty of perjury. See 28 U.S.C. § 1746. Apparently, plaintiff is familiar with this procedure because he verified his May 3, 2005 affidavit pursuant to 28 U.S.C. § 1746.

[3]For example, throughout his affidavit, plaintiff alleges that his prison wages were decreased. (Pl.'s Aff. at 16 ¶67). However, there is no right to compensation for prisoner work, Vanskike v. Peters, 974 F.2d 806, 809 (7th Cir. 1992), and plaintiff was not permitted to proceed on this claim. (See Doc. # 4).

Daniel Bertrand is the GBCI warden; Susan Wallantin is the Business Financial Program Supervisor at WCI; and Liz Lemery is the Correctional Management Services Director at GBCI.

On December 19, 1985, plaintiff was brought to Dodge Correctional Institution (DCI) for evaluation and assessment. Subsequently, on February 25, 1986, plaintiff was transferred to WCI, where he was housed until October 27, 1992. Plaintiff was again housed at WCI from January 20, 1993 to November 18, 1994, and from January 7, 2004 until the present.

## A. Facts Relating to Plaintiff's Legal Loan Claims

Between February 25, 1986 and November 18, 1994, plaintiff incurred $1,754.45 in legal loan debt to WCI. At the time the legal loans were disbursed, incarcerated persons were "under the full impression that it was his or her responsibility to pay off the loan in the future." (Pl.'s Aff. at 3 ¶8).

On November 18,1994, plaintiff was transferred to GBCI. Upon plaintiff's transfer, he still owed $1,754.45 to WCI in legal loan debt. Between November 18, 1994 and February, 1995, plaintiff received income at GBCI. Consequently, plaintiff had funds in his general account to repay his $1,754.45 legal loan debt to WCI.[4] However, from November 1994 to January 1996, plaintiff requested that these funds to be transferred to his release account.[5] Thus, the GBCI Business Office transferred funds into plaintiff's release account

---

[4]The general account is the account established by an institution to receive all funds for the benefit on an inmate, and "an inmate may request to have general account funds disbursed for any reason." Wis. Stat. DOC § 309.49(2).

[5]In contrast, the release account is created by deducting 15% of all income earned by or received for the benefit of an inmate, until $500 is accumulated. Wis. Stat. DOC §

until it reached approximately $1,100. Subsequently, on January 24, 1996, the GBCI business office discovered that "plaintiff's release account exceeded the $500 maximum mandated under DOC § 309.466 by $600." (Pl.'s Aff. at 17-18 ¶73). Also, in January 1996, the WCI Business Office informed the GBCI Business Office of plaintiff's $1,754.45 legal loan debt. Thereafter, defendants transferred $600 from plaintiff's release account into his regular account. (Lemery Aff. at 3 ¶10). Once $600 had been placed in plaintiff's general account, the GBCI Business Office transferred $731.38 "to WCI to satisfy the legal loan." (Pl.'s Aff. 17-18 ¶73).

The $1,023.07 balance was set up as "WITS Restitution Withholding," and assigned a 100% withholding rate.[6] (Wallantin Aff. 3 ¶12). Thereafter, the following amounts were deducted from plaintiff's general account and applied towards the withholding: $794.24, $101.37, $5.85 and $11.66. Accordingly, plaintiff still owes WCI $109.95 for legal loans incurred between February 25, 1986 and November 18, 1994.

**B. Medical Co-Pays**

Plaintiff contends that defendants charged him a co-pay for medical treatment in violation of Wis. Stat. § 302.386. (Pl.s' Aff. at 29 ¶120). Defendants charged co-pay fees

---

309.466(1). "Release accounts may not be disbursed for any reason, until the inmate is released to field supervision, except to purchase adequate clothing for release and for out of state transportation." Wis. Stat. DOC § 309.466(2).

[6]In 1994, the general practice was to use 100% of an inmate's income to pay off his legal debts. (Fuller Aff. at 4 ¶20; Wallantin Aff. at 3 ¶13; Bertrand Aff. at 4 ¶20). Thereafter, in July 2001, a new DOC 309 Internal Management Procedure (IMP) 40 was implemented, which limited the percentage of an inmate's income to be used for repaying legal loan expenses to 50%. (Wallantin Aff. at 3 ¶13).

to plaintiff's prison account for medical treatment on the following occasions:[7]

November 2, 1995: plaintiff was charged a medical co-pay for health "self care" procedures. (Pl.s' Aff. at 7 ¶26.)

November 27, 1995: plaintiff was charged a medical co-payment charge.

February 8, 2002: the nurse attempted to charge plaintiff a co-pay for a follow-up appointment concerning plaintiff's prescription gloves. (Ray Aff. Ex.1003B at 1.)

December 18, 2002: plaintiff was charged $7.50 by the nurse for a "medical Wis. Stat. emergency." (Ray Aff. Ex. 1003C at 1.)

June 30, 2000: the nurses at GBCI attempted to charge plaintiff $2.50 for a "refill" and a "check up." (Ray Aff. Ex. 1003A at 1.)

December 18, 2002: plaintiff was charged $7.50 for a medical co-payment. (Ray Aff. Ex. 1002F at 1.)

December 27, 2002: plaintiff was charged $7.50 for a medical co-payment. (Ray Aff. Ex. 1002F at 1.)

April 18, 2003: plaintiff was charged a medical co-pay when he "received an on-the job injury which required actual medical emergency treatment by the physician." (Ray Aff. Ex. 1002G at 1.)

---

[7]The DOC § 309 Internal Management Procedure 1 provides that inmates shall be charged a $7.50 co-pay for each instance where fact to face contact with a health care provider is the result of a patient initiated request for health care services. (Fuller Aff. at 5 ¶27). However, no provider may deny care or services because the inmate is unable to pay the applicable co-pay. Wis. Stat. DOC § 302.386(3)(c).

## C. Access to the Courts

On September 20, 1989, defendant McCaughtry issued a memorandum prohibiting prisoners from possessing "embossed envelopes from the United States postal office." (Pl.'s Aff. at 16 ¶66.) Then, in 2000, defendant Bertrand stopped providing inmates with their weekly free stamps. Furthermore, when plaintiff submitted canteen order forms requesting carbon paper, "defendant Lemery marked off carbon paper and denied access to carbon paper." (Pl.s Aff. at 13 ¶53.)

On November 24, 2003, plaintiff was sent a "notice of non-delivery of mail" because 25 embossed envelopes that had been mailed to him were seized as contraband. The notice provided that "only inmates in general population are allowed to have embossed envelopes sent in." (Pl.'s Aff. at 25 ¶103.) Thereafter, plaintiff filed Inmate Complaint #GBCI-2003-39420 to address the issue of being denied embossed envelopes. (Pl.s' Aff. at 25 ¶ 104.) However, the mail room jailor stated that the embossed envelopes were destroyed on December 11, 2003.

From 1988 through 2000, prison officials did not provide incarcerated persons with any "persons trained in the law to assist with legal research." (Pl.'s Aff. at 20 ¶ 80.) Moreover, inmates had no direct physical access to an adequate law library because prison officials failed to perform their affirmative duty to provide segregated prisoners with an adequate law library. (Pl.'s Aff. at 20 ¶ 80.)

Plaintiff contends that he has been prevented from bringing "lawsuits to address the loss of his good time credits." (Pl.'s Aff. at 22 ¶93.) Also, in preparing for this case, defendant McCaughtry has refused to provide plaintiff with postage and copies for this case. Moreover, because he is in segregation, plaintiff "had to draft each complaint separately and

by hand-writing each copy" due to defendants' "policy of no photocopy to indigents on legal loan." (Pl.'s Aff. at 28 ¶117.) Also, plaintiff has to "seek an outsource (sic) and friends" to assist him in obtaining copies of his summary judgment materials. (Pl.s' Affidavit of September 20, 2005 at 4 ¶7.)

**D. Medical Care**

Plaintiff asserts that he has "been forced to suffer asthma without any relief of medication because he is unable to purchase nasal spray or other medication on canteen for past eight (8) years." (Pl.'s Aff. at 33 ¶136.) As a result, plaintiff suffered "pain and agony." (Pl.'s Aff. at 32 ¶135.) In addition, when plaintiff's wife ordered nasal spray from a retail outlet, "prison officials disallowed [plaintiff] to have access of alternative method of caring for himself." (Pl.'s Aff. at 32 ¶135.)

On an unknown date, plaintiff suffered "a weight loss which he felt wasn't worth $7.50 to have contact with the nurse." (Pl.'s Aff. at 31 ¶129.) However, "the deputy warden took notice to the plaintiff's weight loss and he ordered a full medical examination of plaintiff, and it turned out the plaintiff had a contagious disease referred to as Hepatitis C which he probably contracted from another person." (Pl.'s Aff. at 31 ¶129.)

On July 28, 2003, after plaintiff was informed that he suffered from Hepatitis C, he "did his own study and research on various treatments, and after locating most logical treatment, he submitted this finding to Dr. Wong to approve a prescription order for vitamins. (Pl.'s Aff. at 33 ¶137.) Dr. Wong refused to approve the prescription, and told plaintiff if he wanted vitamins he would have to purchase them "from canteen at his own expense." (Pl.'s Aff. at 33 ¶137.) Plaintiff states that "[t]here are (sic) no way the plaintiff can purchase vitamins because he's indigent and whatever funds are seized by prison officials to satisfy

its own loan." (Pl.'s Aff. at 33 ¶137.)

Sometime in 1994, prison officials issued plaintiff a plastic ID card. However, plaintiff suffers from an allergies to "certain plastic items." (Pl.s' Aff. at ¶35 146.) Shortly thereafter, plaintiff was transferred to WCI. Upon his arrival at WCI, plaintiff informed the nurse that he needed a medical order for his plastic allergy. However, the nurse refused because she could not locate "documentation in the progress notes maintained by staff." (Pl.'s Aff. at 36 ¶147.) As a result, plaintiff suffered a skin rash from the plastic card. Plaintiff "was finally seen by a nurse about sixteen days after his skin rash had cleared up." (Pl.s' Aff. at 36 ¶150.)

Plaintiff and other inmates are concerned about contracting AIDS, tuberculosis, hepatitis and other contagious diseases in prison. (Pl.'s Aff. at 38 ¶155-157.) They believe that "prison officials have placed incarcerated persons in serious threat of danger of contacting" these diseases because "prison officials are extorting money for medical services." (Pl.s' Aff. at 39 ¶164.)

**E. Equal Protection**

During plaintiff's incarceration at WCI, defendants McCaughtry and Wallantin "charge[d] incarcerated persons on legal loan about 19 cents per carbon paper," while non-indigent inmates were able to "purchase carbon paper at 77 cents for a package of 15 sheets." (Pl.s Aff. at 13 ¶54.) Moreover, defendants have a "discriminatory practice of prohibiting the plaintiff and other incarcerated persons in segregation unit to obtain embossed envelopes in segregation unit while incarcerated persons in general population could receive embossed envelope." (Pl.s Aff. at 16 ¶65.) Finally, plaintiff asserts that indigent inmates on legal loan are prohibited from photocopying self-generated court

documents and are forced to copy all court documents by hand, while those inmates that can afford photocopies without the aid of legal loans are permitted to obtain photocopies.

## III. STANDARD OF REVIEW

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c.) The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

The fact that both parties have moved for summary judgment, and thus both parties

simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720, at 327-28 (3d ed. 1998). Cross motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. See M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944). The proper procedure is to assess the merits of each summary judgment motion independently. See 10A Charles Alan Wright et al., supra, § 2720 at 335-37. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. Id.

## IV. DISCUSSION

### A. Defendants' March 22, 2005 Motion

Defendants assert two defenses in their March 22, 2005 motion. First, defendants contend that the Department of Corrections ("DOC") should be dismissed as a defendant because of sovereign immunity.[8] Second, defendants assert that plaintiff failed to exhaust his administrative remedies in connection with his claims. I first will address DOC's sovereign immunity.

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the

[8] Although the Wisconsin DOC was not named in prior screening orders, a closer reading of plaintiff's complaint confirms that the DOC was indeed named as a party.

State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) (internal citations omitted). The Wisconsin Department of Corrections is considered an "arm" of the State for sovereign immunity purposes, and Wisconsin has not waived sovereign immunity for suits filed pursuant to § 1983. Arndt v. Wisconsin Dept. of Corrections, 972 F. Supp. 475, 477-78 (W.D. Wis. 1996). Further, Congress has not abrogated the States' sovereign immunity under § 1983. Will, 491 U.S. at 62.

Plaintiff appears to argue that Congress abrogated the DOC's immunity with respect to his claims in 42 U.S.C. § 2000d-4. Section 2000d-4 provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Id. I first note that plaintiff has not demonstrated that the DOC is subject to this provision. Regardless, however, plaintiff has not alleged that he was denied the opportunity to participate in any program on the basis of his race, color, or national origin. As such, sovereign immunity prevents him from seeking redress from the DOC pursuant to the provisions of this statute. I turn now to defendants' claim that plaintiff failed to exhaust his administrative remedies.

Title 42 U.S.C. § 1997e(a) bars suits by prisoners "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Failure to exhaust is not

jurisdictional, Greene v. Meese, 875 F.2d 639, 643 (7th Cir. 1989), but rather is an affirmative defense which must be timely raised by defendants, Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999).

"[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002); see also Davis v. Streekstra, 227 F.3d 759, 761 (7th Cir. 2000) (citing McCarthy v. Bronson, 500 U.S. 136 (1991)). However, an inmate does not have to appeal a complaint which had a favorable outcome to exhaust administrative remedies. Thornton v. Snyder, 428 F.3d 690, 695-96 (7th Cir. 2005). Further, with respect to the specificity required in each complaint, the Seventh Circuit has not endorsed a requirement that a defendant to a civil suit first be named in an inmate's prison grievance, instead requiring only that the inmate comply with each state's specific requirement. See Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002).

Finally, with respect to a mixed complaint containing both exhausted and unexhausted claims, some circuits have endorsed a "total exhaustion" requirement, see Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005), pursuant to which the plaintiff must exhaust all administrative remedies with respect to each claim brought in his complaint or all claims will be dismissed. However, the Seventh Circuit has not expressly addressed the issue and appears to have impliedly rejected such a requirement. See, e.g., Lewis v. Washington, 300 F.3d 829, 835 (7th Cir.2002) (affirming dismissal of one claim for failure to exhaust and remanding for exhaustion determination about another); Dixon v. Page, 291 F.3d 485, 490 (7th Cir. 2002) (affirming partial dismissal for failure to exhaust). Moreover, I find persuasive the reasoning employed by the circuits that have declined to adopt such a requirement. See

Ortiz v. McBride, 380 F.3d 649, 656-58 (2d Cir. 2004) (noting that the language of 42 U.S.C. § 1997e(a) is "too ambiguous to sustain the conclusion that congress intended to require district courts to dismiss any prisoner's action containing one or more unexhausted claims rather then to dismiss only the offending claims"). Thus, plaintiff need not have exhausted all claims alleged in his complaint in order to proceed.

The Inmate Complaint Review System (ICRS) is the administrative remedy available to Wisconsin inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

To use the ICRS, an inmate must file a complaint with the Inmate Complaint Examiner (ICE) with fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) and 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) and 310.11(11). Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner. Wis. Admin. Code § DOC 310.13(1). The corrections complaint examiner (CCE) reviews the appeal and makes a recommendation to the Secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The

Secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

**1. Access to Courts Claims**

Defendants' contend that plaintiff filed only two complaints associated with his access to the courts claim: 1) #GBCI-2003-33054 ("stamp complaint") and 2) #GBCI-2002-33914 ("photocopy complaint"). With respect to plaintiff's stamp and photocopy complaints, defendants assert that plaintiff failed to exhaust his administrative remedies because he did not name particular defendants in his prison complaints.

As I noted, the Seventh Circuit does not require that a prisoner name specific defendants in a complaint. Strong, 297 F.3d at 649. In Strong, the Seventh Circuit concluded that, "when the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. at 650. With respect to the level of detail required in an offender complaint, the DOC administrative rules provide only that offender complaints shall "contain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code DOC § 310.09(1)(e). Thus, as long as plaintiff's complaint alerted prison officials to the nature of the wrong, he properly exhausted his administrative remedies.

On October 6, 2003, plaintiff filed Inmate Complaint #GBCI-2003-33054, complaining about not receiving "basic essentials."[9] The ICE dismissed the complaint on October 7, 2003, and on October 9, 2003, plaintiff appealed the dismissal, complaining that the

---

[9]Inmate Complaint #GBCI-2003-33054 also complains about reduction in inmate pay rates. However, plaintiff was not permitted to proceed on this claim pursuant to this court's September 20, 2004 order.

"warden" had stopped giving out a free weekly stamp. Subsequently, on October 17, 2003, the CCE recommended that the complaint be dismissed, and the Secretary accepted the CCE's recommendation on October 25, 2003. (Ray Aff. Ex. 1001B at 7-9.) Plaintiff has exhausted his administrative remedies because he alleges the same claim (denial of stamps), against the same individual (the "warden," who turned out to be defendant Bertrand)[10] and relied on the same type of legal theory (access to the courts) as set out in his grievance. Consequently, I find that plaintiff has exhausted his administrative remedies with respect to his claim that he was denied free stamps.

On September 23, 2002, plaintiff filed Inmate Complaint #GBCI-2002-33914 complaining about defendants' memorandum prohibiting indigent inmates from making photocopies. On September 25, 2002, the ICE and defendant Bertrand dismissed the complaint. Then, on October 9, 2002, plaintiff appealed Bertrand's dismissal. Subsequently, on October 16, 2002, the CCE recommended that the complaint be dismissed, and the Secretary accepted the CCE's recommendation. (Ray Aff. Ex. 1002E) Here, while it is true that plaintiff did not identify defendant Lemery in his inmate complaint, the memorandum plaintiff complained of was issued by Lemery. (Ray Aff. Ex. 1002 E at 3.) Furthermore, plaintiff's failure to identify Lemery in his prison complaint did not prevent prison officials from addressing plaintiff's challenge to the memorandum at the institutional level. For these reasons, I find that plaintiff exhausted his remedies with respect to his claim that he was prohibited from making photocopies.

Finally, in addition to the two inmate complaints that defendants have provided,

---

[10]Defendant Bertrand has been the warden since 1996.

plaintiff claims that he filed two more inmate complaints concerning the denial of his right to access the courts. On October 7, 2002, plaintiff filed Inmate Complaint #GBCI-2002-35178, challenging GBCI's practice of not allowing embossed envelopes to enter the prison. (Pl.'s Aff. at 15 ¶ 63.) Also, on February 9, 2004, plaintiff filed Inmate Complaint #WCI-2004-5144, complaining that his embossed envelopes were destroyed prior to the resolution of Inmate Complaint #GBCI-2003-39420. (Pl.'s Aff. at 16 ¶65.) Defendants do not address plaintiff's allegations that he filed these inmate complaints. Accordingly, defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies with respect to his embossed envelope claims. See Massey,196 F.3d at 735.

**2. Exhaustion of Legal Loan Due Process Claims**

Plaintiff seeks to challenge the application of the DOC's legal loan repayment requirements. The following Inmate Complaints are associated with plaintiff's legal loan claim: 1) #RCI-1999-622879 ("deduction complaint"); 2) #OSCI-1997-0356 ("court order complaint"); 3) #RCI-2000-5593 ("unconstitutionality of legal loan complaint"); and 4) #RCI-1999-57306 ("release account complaint").

In several of plaintiff's complaints, he failed to comply with prison imposed time restrictions for filing and appeal. For example, in his October 29, 1999 complaint, plaintiff challenges an amount deducted from his prison account to satisfy his legal loan debt almost a year previously. Prison regulations require that an inmate file a complaint within fourteen days of the event or occurrence. Although plaintiff asserts that the loan in question was incurred prior to the enactment of the PLRA and that he is not required to comply with the exhaustion requirements, both the deduction in question and plaintiff's complaint regarding

such deduction occurred well after the enactment of the PLRA. Plaintiff is therefore required to comply with its provisions. McCoy v. Gilbert, 270 F.3d 503, 512 (7th Cir. 2001). With respect to plaintiff's February 12, 2000 complaint, plaintiff failed to file an appeal. And, with respect to his September 13, 1999 complaint, plaintiff failed to timely file an appeal pursuant to the regulations. Because plaintiff failed to comply with the prison administrative regulations regarding these complaints, he has failed to exhaust his administrative remedies. Pozo, 286 F.3d at 1024.

However, in addition to the four inmate complaints defendants have submitted, plaintiff claims that he filed another inmate complaint challenging the constitutionality of the legal loan process. On May 9, 2002, plaintiff filed Inmate Complaint #GBCI-2000-13953, complaining about the "illegal loan process." (Pl.s' Aff. at 12 ¶50.) Defendants do not address plaintiff's allegations that he filed this inmate complaint. Accordingly, defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies for Inmate Complaint #GBCI-2000-13953. See Massey, 196 F.3d at 735. Further, plaintiff properly exhausted his February 6, 1997 complaint in which he challenges the warden's ability to withdrawal funds from his account without a court order. As such, plaintiff will be permitted to proceed to the merits of his challenges to the legality of the legal loan process.

**3. Exhaustion of Co-Pay Due Process Claims**

Plaintiff filed four complaints with respect to his co-pay claims. The following inmate complaints are associated with plaintiff's co-pay claims: 1) #GBCI-2000-19158 ("refill co-pay complaint"); 2) #GBCI-2002-44140 ("erroneous co-pay complaint 1"); 3) #GBCI-2003-14446 ("emergency medical co-pay complaint"); 4) #GBCI-2002-6179 ("erroneous co-pay complaint

2"); and 5) #GBCI-2003-0168 ("co-pay procedures complaint"). Plaintiff either untimely filed or neglected to complete the appellate process with respect to his second, fourth and fifth complaints. Because plaintiff must complete the administrative process with respect to those claims in order to exhaust them, I conclude that he has not exhausted his administrative remedies as to those claims. Pozo, 286 F.3d at 1024.

However, with respect to plaintiff's emergency medical care complaint, plaintiff filed Inmate Complaint #GBCI-2003-14446 on April 24, 2003, complaining that defendants charged him a medical co-pay for emergency medical treatment. Plaintiff properly completed all appeals with respect to his emergency medical co-payment claim (Ray Aff. Ex. 1002G at 7, 9) and, as such, has properly exhausted his administrative remedies. Finally, with respect to plaintiff's refill co-payment complaint, he received a favorable outcome as to that complaint and is not required to appeal a favorable outcome. See Dixon, 291 F.3d at 485. Moreover, although plaintiff did not name specific defendants in his complaints, neither the Seventh Circuit nor the DOC regulations require such specificity.

**4. Exhaustion of Plaintiff's Equal Protection Claims**

Plaintiff's asserts three equal protection claims. First, plaintiff asserts that defendants "charge[d] incarcerated persons on legal loan about 19 cents per carbon paper," while non-indigent inmates were able to "purchase carbon paper at 77 cents for a package of 15 sheets." (Pl.s Aff. at 13 ¶54.) Second, he asserts that defendants have a "discriminatory practice of prohibiting the plaintiff and other incarcerated persons in segregation unit to obtain embossed envelopes in segregation unit while incarcerated persons in general population could receive embossed envelope." (Pl.s Aff. at 16 ¶65.) Finally, plaintiff asserts that indigent inmates on legal loan are prohibited from photocopying court documents and

are forced to copy all self-generated court documents by hand, while those inmates that can afford photocopies without the aid of legal loans are permitted to obtain photocopies of such documents. Defendants contend that plaintiff never filed an inmate complaint concerning his equal protection claims.

Plaintiff has not asserted that he filed a complaint with respect to the price difference for carbon paper, and none of his other complaints put defendants on notice of the issues. As such, plaintiff has failed to exhaust his carbon paper claim. However, plaintiff asserts that on December 1, 2003, he filed Inmate Complaint #GBCI-2003-39420, alleging that plaintiff and other incarcerated persons in segregation unit were prohibited from possessing embossed envelopes sent by the United States Postal Service. (Pl.'s Aff. at 16 ¶ 64). Defendants have not responded to plaintiff's allegations that he filed Inmate Complaint #GBCI-2003-39420. Further, on September 23, 2002, plaintiff filed Inmate Complaint #GBCI-2002-33914 complaining about defendants' memorandum prohibiting indigent inmates from making photocopies. Accordingly, plaintiff may proceed on his photocopy and embossed envelope claims. See Massey,196 F.3d at 735 (holding that defendants have burden of pleading and proving exhaustion).

**5. Exhaustion of Eighth Amendment Medical Care Claims**

The following inmate complaints are associated with plaintiff's medical care claims:

1) #GBCI-2000-30045;[11] 2) #GBCI-1995-1349;[12] and 3) #GBCI-1995-1443.[13] Defendants have not responded to plaintiff's allegations that he filed inmate complaints concerning medical care. As a result, plaintiff may proceed on all his medical care claims. See Massey,196 F.3d at 735.

In light of the foregoing, defendants' motion for summary judgment is granted in part and denied in part as described herein. Accordingly, I will now address defendants' March 29, 2005 motion for summary judgment.

**B. Defendants' March 29, 2005 Motion for Summary Judgment**

In their March 29, 2995 motion, defendants first assert that there is a six-year statute of limitations for § 1983 actions. Gray v. Lacke, 885 F.2d 399, 407-09 (7th Cir. 1989). Therefore, they contend that all of plaintiff's claims arising prior to February 19, 1998 are time-barred. However, defendants first raised this argument in their reply brief. Accordingly,

---

[11]In Inmate Complaint #GBCI-2000-30045, plaintiff states that "[a]s far back as October 23, 2000, the plaintiff challenged hygiene items for indigent inmate policy in Inmate Complaint #GBCI-30045-00." (Pl.'s Aff. at 23 ¶ 97). The policy required incarcerated persons to show the cell hall staff his monthly statement and, if the account had a total negative balance of $0.00, incarcerated persons may obtain a toothbrush, paste and a razor for a two week period. (Pl.'s Aff. at 23 ¶ 97).

[12]On November 2, 1995, the plaintiff filed Inmate Complaint #GBCI-1995-1349 related to co-payment concerns. (Pl.'s Aff. at 7 ¶26). The complaint was dismissed on November 24, 1995 . The basis for dismissal was that there was no official 'self-care' policy – the Bureau of Health Services apparently felt that such a policy was not necessary in part because 'individual health care is a matter of individual choice. It is encouraged that each inmate take responsibility to practice good health."

[13]On November 27, 1995, the plaintiff filed inmate complaint GBCI-1443-95 after prison officials refused to allow the plaintiff to obtain nasal spray from a retail outlet. (Pl.'s Aff. at 7 ¶27).

I find that defendants have waived the statute of limitations defense. Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights, 558 F.2d 1283, 1287 (7th Cir. 1977) ("A claim that the statute of limitations bars a lawsuit is an affirmative defense and it must be pleaded or it will be considered waived.").

**1. Legal Loan Due Process Claims**

Plaintiff alleges: 1) the indigent legal loan process is unconstitutional because prison officials seized money from his account without due process; 2) prison officials illegally took money from his release account; 3) he is not subject to the legal loan policy that became effective after his incarceration; and 4) the warden is required to obtain a court order before taking funds from an inmate's prison account.

In addressing an alleged due process violation, the court must first determine whether the person was deprived of a protected interest and, if so, what process was due. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). The constitutional violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Zinermon v. Burch, 494 U.S. 113, 125 (1990). If a person has a protected property interest, the due process clause of the Fourteenth Amendment requires "some form of hearing" before the owner is deprived of a protected property interest. Id. at 433 (citing Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972)); see also Zinermon, 494 U.S. at 125.

Plaintiff contends that defendants' legal loan policy is unconstitutional because defendants deducted money from his prison account without providing plaintiff due process. Defendants contend that their actions are authorized because state law gives them complete control over a prisoner's use of property.

Wis. Stat. § 301.32(1) provides in relevant part:

> All money and other property delivered to an employee of any state correctional institution for the benefit of a prisoner [] shall be delivered to the warden [] who shall enter the property on his or her accounts to the credit of the prisoner. The property may only be used under the direction and with the approval of the [] warden.

It is undisputed that inmates in Wisconsin have a property interest in prisoner accounts. Campbell v. Miller, 787 F.2d 217, 222 (7th Cir. 1986). Thus, state prisoners are entitled to due process with respect to any deprivation of this money. Zinermon, 494 U.S. at 125; see also Reynolds v. Wagner, 128 F.3d 166, 179 (3rd Cir. 1997)(stating that inmates are entitled to due process when funds are removed from prison accounts). The Supreme Court has held that "due process is flexible and calls for such procedural protections as the situation demands." Gilbert v. Homar, 520 U.S. 924, 930 (1997) (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Accordingly, the need for procedural safeguards is somewhat reduced where the deduction of money from inmates' accounts goes substantially to benefit the inmates' interests. Mahers v. Helford, 76 F.3d 951, 954-55 (8th Cir. 1996). Ultimately, the constitutional issue is whether inmates are provided with adequate notice so as to be able to challenge any improper deprivation. Reynolds, 128 F.3d at 179.

Plaintiff asserts that defendants were not authorized to deduct money from his prison account because he did not sign the Loan Repayment Agreement Form.

The Loan Repayment Agreement provides in relevant part:

> I have received a copy of DOC Internal Management Procedure Number 29, Funds for Legal Correspondence and Copying.[14]

---

[14]DOC IMP 29 provides that all funds received for the benefit of the inmate may be used to repay the loan. (Fuller Aff. Ex. A at 3).

> I understand any charges to my account under this procedure are loans.
>
> I understand this document and hereby agree to all of its terms.
>
> I also agree to repay any and all outstanding legal loans provided to me under this policy.

(Fuller Aff. Ex. B at 2).

In this case, it is undisputed that the only Loan Repayment Agreement Form plaintiff signed is dated November 16, 2005, more than 9 years after defendants made the first withdrawal of $731.38.[15] Regardless, plaintiff concedes that at the time he received his legal loans, he was "under the full impression" that it was his "responsibility to pay off the loan in the future." (Pl.'s Aff. at 3 ¶8.)[16]

In Jensen v. Klecker, 648 F.2d 1179 (8th Cir. 1981), a prisoner plaintiff alleged that he was denied due process where defendants withdrew postage costs from his account without getting a signed voucher from plaintiff. The court affirmed summary judgment for the defendants because the deductions were made in accordance with prison regulations, the prisoner received services for the amounts charged, and the prisoner was provided with copies of his account statements. Id. at 1183. "While plaintiffs obviously have a property interest in the funds on deposit in their inmate accounts, they have failed to show that they were unlawfully deprived of their property or that they have been deprived of their property

---

[15]Incidentally, plaintiff has asserted that the November 16, 2005 Loan Repayment Agreement was "signed under protest and duress." (Fuller Aff. Ex. B.)

[16] Notably, plaintiff asserts that prior to 1992, prison officials never sat down to dictate the terms of loan and repayment. (Pl.'s Aff. at 3 ¶11.) However, this does not contradict his statement that he knew that he would be required to repay the loan. Moreover, plaintiff gives no indication that he was unaware of the terms of the loan after 1992.

without due process." Id.

Similarly, plaintiff in this case concedes that he knew he would be required to repay his legal loans. Also, he does not allege that he was charged for services that he did not receive. Furthermore, it is undisputed that every month plaintiff was provided with a copy of his prison account statement. Accordingly, I find that plaintiff has not established that he was denied his constitutional right to due process.

Next, plaintiff asserts that he is not subject to the legal loan rules that were enacted after his initial incarceration in 1985. Defendants contend that since his incarceration, all existing DOC policies for collecting inmate debts applied to plaintiff.

Here, plaintiff submits that in 1985 legal loans were provided to inmates under HSS 309.51(1) and (2). HSS 309.51 provided:

> (1) Legal correspondence may not be denied due to lack of funds, except as limited in sub. (2) Inmates without sufficient funds in their general account to pay for paper, photocopy work or postage may receive a loan. Any amount advanced to the inmate's general account shall be charged to the inmate's general account for future repayment.
>
> (2) If the superintendent determines that charges for legal correspondence substantially exceed the inmate's ability to pay, the superintendent may grant a subsidy from institution funds to the inmate. No subsidy may exceed $25.

Wis. Admin. Code HSS § 309.51 (eff. 11-1-81).

Today, Wis. Admin. Code DOC § 309.51 (eff. 1-1-90) provides:

> (1) Correspondence to courts, attorneys, parties in litigation, the inmate complaint review system under ch. DOC 310 or the parole board may not be denied due to lack of funds, except as limited in this subsection. Inmates without sufficient funds in their general account to pay for paper, photocopy work, or postage may receive a loan from the institution where they reside. No inmate may receive more than $200 annually under this subsection, except that any amount of the debt the inmate repays during the year may be advanced to the inmate again without counting against the $200 loan limit. The $200 loan limit may be exceeded with the superintendent's approval if the

> inmate demonstrates an extraordinary need, such as a court order requiring submission of specified documents. The institution shall charge any amount advanced under this subsection to the inmate's general account for future repayment. An inmate may be permitted to retain in the inmate's general account an amount of money specified, in writing, by the bureau of adult institutions that is not subject to repayment of the loan.

The difference between HSS § 309.51 and DOC § 309.51 is that inmates today may retain an amount of money in their accounts that is not subject to legal loan repayment. However, plaintiff makes no allegation that the application of DOC § 309.51 adversely affects him in any way. Indeed, in 1985, the general practice was to use 100% of an inmate's available funds to pay legal loan debts. (Wallantin Aff. at 2 ¶9.) However, today the legal loan policy provides that only 50% of an inmate's income may be used to repay legal loan expenses. (Fuller Aff. at 4 ¶20.) Thus, plaintiff would suffer a detriment if he were exempted from current legal loan requirements. Accordingly, he has failed to demonstrate a constitutional deprivation.

Finally, plaintiff asserts that the warden must get a court order before prison officials can deduct money from plaintiff's prison account to repay legal loan debt. Defendants contend that a plain reading of the statute does not require them to get a court order.

In support of his proposition, plaintiff relies on Wis. Stat. § 301.328, which provides in relevant part:

> If a prisoner fails to repay a litigation loan to the department, the warden of the institution where the prisoner is incarcerated, imprisoned, confined or detained may submit a certification under oath to the clerk of circuit court in the county where the institution is located.

Defendants are correct in their contention that, on its face, the statute does not require prison officials to obtain a court order before deducting funds from plaintiff's prison account. By using the word "may" rather than "shall," the statute imposes no duty on the

warden. Defendants also assert that because § 301.328 became effective May 1, 1998, it does not apply to the 1996 deductions from plaintiff's prison account. Regardless, plaintiff's allegations that defendants violated state law does not implicate the Constitution. Hartland Sportsman's Club v. Delafield, 35 F.3d 1198, 1202 (7th Cir. 1994). Furthermore, plaintiff was given notice that funds would be withdrawn from his prison account to repay his legal loan debt. Accordingly, plaintiff has not established that defendants violated due process by deducting money from his prison account to repay his legal loan debt.

**2. Medical Co-payment Due Process Claims**

Plaintiff alleges that defendants violated his due process rights when they removed money from his prison account to pay for his medical co-pay charges. Defendants contend that inmates must pay a co-pay when they request medical services.

In prisons, since inmates are deprived of the ability to seek health care on their own, the state is obligated to provide basic health care. As the Supreme Court explained in DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989):

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being....The rationale for this is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - - e.g., food, clothing, shelter, medical care, and reasonable safety - - it transgresses the substantive limits on state actions set by the Eighth Amendment and the Due Process Clause.

However, the Eighth Amendment does not guarantee free medical care. Reynolds v. Wagner, 128 F.3d 166, 174 (3rd Cir. 1997.) Co-pay policies under which inmates must bear part of the cost of their treatment are constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. See, e.g., Jones-Bey v. Cohn,

115 F. Supp.2d 936, 940 (N.D. Ind. 2000) (citing Shapley v. Nevada, 766 F.2d 404 (9th Cir. 1985); Johnson v. Dep't of Public Safety and Corr. Srvs, 885 F. Supp. 817 (D. Md. 1995)).

Wisconsin law provides that the DOC shall require an inmate who requests medical services to pay a co-pay of not less than $2.50 for each request. Wis. Stat. § 302.386(3)(c). No provider may deny care or services because the inmate is unable to pay the applicable co-pay. Id. However, inability to pay these charges does not relieve the inmate of liability for the charges unless the DOC grants the inmate an exception or waiver. Id. Once the co-pay has been incurred, the DOC may collect a co-pay, but the state may not collect for the same expense twice. Wis. Stat. § 302.386(6).

First, plaintiff alleges that he was charged a co-pay for emergency medical treatment. (Ray Aff. Ex. 1002G at 1.) Defendants maintain that plaintiff did not establish that he needed emergency care.

Wis. Admin. Code DOC § 316.05(2) provides in relevant part:

> Health services staff shall not charge an inmate or a juvenile a copayment for any of the following:
>
> > (2) Treatment for an actual medical or dental emergency as determined by a physician, dentist or registered nurse.

In this case, it is undisputed that plaintiff's work supervisor did not file an accident report for plaintiff related to the medical care. (Ray Aff. Ex. 1002G at 5). Moreover, when defendants requested more information to determine whether plaintiff has been improperly charged, plaintiff refused to provide more any details. (Ray Aff. Ex. 1002G at 5). At this point, plaintiff has submitted no additional information demonstrating that he was charged for emergency care contrary to Wis. Admin. Code DOC § 316.05(2). "It is well-settled that conclusory allegations...without support in the record, do not create a triable issue of fact."

Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998)). Accordingly, I find that plaintiff has failed established that defendants' actions rise to the level of a constitutional violation.

Second, plaintiff alleges that defendants' assessment of the copayment violates the Ex Post Facto clause because the co-pay policy was not in effect at the time of his incarceration. Defendants contend that since plaintiff's incarceration, all existing DOC policies for collecting on inmate debts applied to him.

The Ex Post Facto Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" California Dep't of Corrections v. Morales, 514 U.S. 499, 504 (1995) (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)). Reasonable regulations of the conditions of prison confinement, and reasonable amendments to such regulations, are not punishment and do not violated the Ex Post Facto Clause. See Gilbert v. Peters, 55 F.3d 237, 238-39 (7th Cir. 1995). Here, Wis. Stat. § 302.386(3)(c) does not impose or alter punishment for criminal activity. Rather, the law merely requires inmates to pay a nominal amount for medical care. Accordingly, plaintiff has not established an Ex Post Facto violation.

Third, plaintiff alleges that he was charged a co-pay to refill a medication. Defendants ordered that the charge be reversed after plaintiff complained.

Wis. Admin. Code DOC § 316.05 provides in relevant part:

> Health services staff shall not charge an inmate or a juvenile a copayment for any of the following:
>
> > (3) A follow up medical, dental or nursing appointment determined and scheduled by a health care provider.

In this case, it appears that plaintiff was reimbursed for the $7.50 co-pay charge. (See Ray Aff. Ex. 1003A at 5). In addition, plaintiff makes no allegations that the medical co-pay charge was not reversed. Accordingly, plaintiff has not alleged facts of a constitutional magnitude.

Fourth, plaintiff seems to make a general allegation that defendants violate his due process rights every time they deduct money from his prison account to satisfy his medical co-pay expenses. He first contends that because he is in segregation and unable to earn wages, he is not required to pay a co-pay pursuant to Wis. Admin. Code DOC § 316.05(7).

Wis. Admin. Code DOC § 316.05(7) exempts from the co-pay requirement "persons who reside in a s. 938.02 (15m), Stats., secured correctional facility and who do not have the opportunity to earn wages." Plaintiff contends that, as a segregation inmate, he is unable to earn wages and, as such, falls within this provision. However, to be eligible under this provision, plaintiff must reside in a Wis. Stat. § 938.02 secured correctional facility. Section 938 is entitled "The Juvenile Justice Code," and it is apparent from a further reading of the statute that the persons exempted from the co-pay requirement are juveniles housed pursuant to § 938. Thus, plaintiff does not meet the requirement and application of the co-pay requirement as to him does not violate that regulation.

Finally, plaintiff asserts that because he has refused to sign the Acknowledgment of Copayment Charges Form (DOC-1557), such withdrawals are unconstitutional. As noted, due process is a flexible concept which "calls for such procedural protections as the situation demands." Gilbert, 520 U.S. at 930. Furthermore, the relevant inquiry is whether inmates are provided with adequate notice so as to be able to challenge any improper deprivation. Reynolds, 128 F.3d at 179.

The DOC -1557 provides in relevant part:

> The Department of Corrections requires all offenders housed in a state correctional institution or correctional center to pay a co-payment charge of $7.50 for each occasion of a self-initiated face-to-face contact in which health services are provided by a health care provider. No offender will be denied medical, dental or nursing services based only upon inability to pay a co-payment fee.
>
> My signature below shows:
>
> (1) I have read or had read to me the above notice of medical, dental and nursing services co-payment charges;
>
> (2) I agree to pay this co-payment fee for all health services requests that I initiate that result in a face-to-face contact with a health care provider and health services are provided;
>
> (3) I agree that this amount will be disbursed from my (general) trust account. If I have no funds, available to pay the co-payment amount, I understand and agree I will be loaned the co-payment amount and I will be expected to repay the loan from my general account.
>
> I further understand that if I refuse to sign this form or any disbursement request, I will not avoid these co-payment charges.

(Fuller Aff. Ex. G).

Here, it is undisputed that plaintiff refused to sign the DOC-1557. However, plaintiff does not allege that he was unaware of the co-pay requirement. See Reynolds, 128 F.3d at 179-80 (finding that oral notification of co-pay policy satisfied due process). Moreover, plaintiff does not argue that the deductions were not made in accordance with prison regulations, nor does he assert that he was charged for services he did not receive. See Jensen, 648 F.2d at 1183.

While defendants do not argue this point, it is worth noting that in order to have a fee system work practicably and at the same time provide medical services in a manner that

does not constitute deliberate indifference to serious medical needs, a prison must have the ability to deduct fees from an inmate's account even when the inmate refuses to grant authorization. See Campbell, 787 F.2d at 224. That is, if inmates know that they can refuse to pay, still receive treatment, and in the meantime spend their funds on other things, then it is likely that at least some prisoners will simply refuse to authorize deductions. Reynolds, 128 F.3d at 180. Such refusals would "undermine the ability" of the prison to administer its medical fee-for-service program. Id. For the foregoing reasons, plaintiff has not established a due process violation based on defendants imposition of a medical co-payment.

**3. Access to the Courts**

Plaintiff contends that defendants hindered his access to the courts when they: 1) denied him access to photocopies; 2) failed to provide him with free stamps; and 3) destroyed his embossed envelopes. Defendants maintain that they provided plaintiff with the tools necessary to access the courts, and that plaintiff has failed to establish an injury in fact.

It is well established that prisoners have a constitutional right of access to the courts for pursuing post-conviction remedies and for challenging the conditions of their confinement. Campbell v. Miller, 787 F.2d 217, 225 (7th Cir. 1986) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)). This right "requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828.

To establish a denial of his constitutional right an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. See Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Alston v. Debruyn, 13

F.3d 1036, 1040-41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). The plaintiff must have suffered injury "over and above the denial." Walters v. Edgar, 163 F.3d 430, 433-34 (7th Cir. 1998)(citing Lewis, 518 U.S. at 343). Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. Lewis, 518 U.S. at 353.

Plaintiff first complains that he was denied access to the courts because he was prevented from making photocopies. However, there is no independent constitutional right to photocopy; therefore, the "reasonableness of a prison's photocopy policy becomes relevant only after the prisoner has shown that the policy is impeding" access to the courts. Jones v. Franzen, 697 F.2d 801, 803 (7th Cir. 1983). Specifically, to make a claim under 42 U.S.C.§ 1983 concerning denial of photocopying, a prisoner must "show that the denial prevented him from exercising his constitutional right of access to the courts." Id.

Here, plaintiff concedes that he has been able to access the courts. Specifically, he states that "there is little doubt in the plaintiff's mind if he had not sat down for some long hours and under the constant pain of having to write each separate complaint to commence this action, he would have been denied the right to redress these claims." (Pl.'s Aff. at 28 ¶118; 29 ¶119). Accordingly, plaintiff has not alleged sufficient facts to state a constitutional violation.

Second, plaintiff complains that defendant Bertrand stopped providing inmates with free weekly stamps. However, there is no constitutional right to free stamps. Lewis v. Sullivan, 279 F.3d 526, 528 (7th Cir. 2002) (stating that the Supreme Court has never held

that access to the courts must be free); see also Gaines v. Lane, 790 F.2d 1299, 1307 (7th Cir. 1986) (stating that the prison is under no obligation to provide unlimited mail and legal supplies for the inmates). Furthermore, plaintiff has not demonstrated that he suffered an injury as a result of not receiving free stamps. Lewis, 518 U.S. at 353 n.4. While plaintiff alleges that he was prevented from litigating cases related to his good time credits, he gives no indication how lack of free postage hindered his attempts to prosecute this case. If lack of postage was inhibiting plaintiff's ability to litigate, he could have obtained postage by requesting a legal loan subsidy. However, Bertrand did not receive a request from plaintiff to exceed the $200 legal loan. See Blaise v. Fenn, 48 F.3d 337, 340 n.5 (8th Cir. 1995) (rejecting claim where inmate failed to request available extension of legal loan for postage). Accordingly, I find that plaintiff has failed to establish an access to the courts violation.

Third, plaintiff alleges that the embossed envelopes he received in the mail were destroyed as contraband. However, plaintiff has not established that he suffered any injury as a result of being denied embossed envelopes. Accordingly, plaintiff has failed to establish a constitutional violation.

**4. Plaintiff's Eighth Amendment Medical Care Claims**

Plaintiff contends that defendants denied him medical care by assessing a co-pay for medical treatment. Defendants assert that plaintiff has failed to establish: 1) that he suffered a serious medical need; and 2) that defendants were deliberately indifferent to plaintiff's serious medical need.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994);

Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (internal quote marks omitted). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. See Reed v. McBride, 178 F.3d 849, 852-53 (7th Cir. 1999); Gutierrez, 111 F.3d at 1371.

First, plaintiff alleges that he has been denied hygiene items for fifteen years. While the Supreme Court has held that inmates are entitled to hygiene items such as tooth-paste, Rhodes v. Chapman, 452 U.S. 337, 355 (1981); Schmitt v. Crist, 333 F.Supp. 820, 822 (E.D. Wis. 1971), plaintiff has not claimed that denial of hygiene items caused him to experience a harm such that it constitutes serious medical need. Farmer, 511 U.S. at 834; see also Caldwell, 790 F.2d at 601 (stating that absent a claim that plaintiff has suffered some serious deprivation that resulted in actual harm, plaintiff has not made out an Eighth Amendment violation). Accordingly, plaintiff has failed to establish that defendants' actions

rise to the level of a constitutional violation.

Second, plaintiff alleges that "prison official (sic) did nothing to promulgate rules on self-care or on the subject of co-insurance policy under the statute requirements." (Pl.s' Aff. at 31 ¶131.) However, plaintiff does not allege that he experienced a serious medical need. Farmer, 511 U.S. at 834. Moreover, plaintiff does not explain how defendants' failure to promulgate self-care rules denied him medical care treatment because he could not pay the co-pay fee. See Shapley, 766 F.2d at 408 (holding that inmate's complaints that a $3 co-pay is unconstitutional is not sufficient, by itself, to state a constitutional violation). Consequently, plaintiff has failed to establish facts of a constitutional magnitude.

Third, plaintiff alleges that the "medical unit declined to refill his order for nasal spray and medication for his asthma because those items are sold on canteen." (Pl.'s Aff. at 32 ¶134). Notably, plaintiff does not allege that the imposition of the medical co-pay resulted in the denial of medical treatment. Rather, he claims that he disagreed with the medical unit about whether his asthma medications should be refilled. However, disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of Estelle v. Gamble. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003). Furthermore, while the Seventh Circuit has concluded that "asthma, depending upon its degree, can be a serious medical condition," Garvin v. Armstrong, 236 F.3d 896 (7th Cir. 2001), plaintiff has not alleged that his asthma is sufficiently severe to constitute a serious medical condition, see Oliver v. Deen, 77 F.3d 156, 160 (7th Cir. 1996) (finding that a mild case of asthma, which was allegedly exacerbated by second-hand tobacco smoke, did not rise to the level of seriousness sufficient to support a claim for relief). Accordingly, the limitation of over the

counter medications only to inmates with serious medical need does not offend the Constitution. Hudgins v. DeBruyn, 922 F. Supp. 144, 151 (S.D. Ind. 1996).

Fourth, plaintiff claims that he was denied a prescription for vitamins for his hepatitis C treatment. He states that:

> [a]fter the plaintiff was informed that he suffered a contagious disease referred to as hepatitis C, he did his own study and research on various treatments, and after locating [the] most logical treatment, he submitted this finding to Dr. Wong to approve a prescription for vitamins. Dr. Wong alleged that he would not approve the prescription, and if plaintiff wanted it he would have to purchase the vitamins from canteen at his own expense. There [was] no way the plaintiff can purchase vitamins because he's indigent and whatever funds are seized by prison officials to satisfy its own loan.

(Pl.'s Aff. at 33 ¶137). Plaintiff does not complain that the medical co-pay prevented him from receiving medical treatment, and his disagreement with the prison doctor does not rise to the level of a constitutional violation. Ciarpaglini 352 F.3d at 331. Finally, to the extent he is unable to purchase vitamins from the canteen, it is because he has chosen to spend his money on litigating his cases. This does not state a constitutional violation. Cf. Lumbert v. Dept. of Corr., 827 F.2d 257, 260 (7th Cir. 1987) (stating that inmates must prioritize their expenses).

Fifth, plaintiff asserts that he suffered a skin rash from a plastic card and that it took the nurse more than two weeks to respond to his request for medical treatment. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)). Here, plaintiff has presented no evidence that the delay in treatment had any detrimental effect. In fact,

plaintiff concedes that by the time he saw the nurse his allergy had cleared up. Thus, plaintiff has failed to establish an Eighth Amendment violation.

Finally, plaintiff contends that he and other inmates may be exposed to harm because contagious diseases are being spread. However, the mere possibility that the plaintiff may catch a communicable disease is too speculative to amount to a constitutional violation. See Knox v. McGinnis, 998 F.2d 1405, 1413 (7th Cir. 1993). Accordingly, plaintiff has not alleged facts sufficient to establish an Eighth Amendment violation, and defendants' motion for summary judgment is granted as to plaintiff's Eighth Amendment claims.

**5. Plaintiff's Equal Protection Claims**

To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. See Caldwell v. Miller, 790 F.2d 589, 609 (7th Cir. 1986).

A prison regulation that treats inmates unequally will be upheld if it is reasonable in light of legitimate penological interests. May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000). However, while prison officials are to be accorded deference with respect to the administration of prison affairs, and a mere inconsistency in the treatment of some prisoners is not sufficient to state an Equal Protection claim, when a plaintiff asserts that defendants discriminated him as a member of a group in favor of others similarly situated, the state must

come forward with a legitimate government interest. Durso v. Rowe, 579 F.2d 1365, 1379 (7th Cir. 1978). Upon such a showing, the plaintiff then has the burden of demonstrating that the regulation at issue is not rationally related to any of the legitimate interests presented by the state. Id. However, "a court ought not dismiss an equal protection claim on the basis of reasons unrevealed to the court." Id. (citing Cruz v. Beto, 405 U.S. 319, 321(1972)). "In the absence of an articulated purpose for the distinctions drawn here, [the court] cannot indulge in supplying an imaginary purpose or basis for the classification, and thereby preclude plaintiff[] from showing that such an 'apparent' basis does not actually exist." French v. Heyne, 547 F.2d 994, 999 (7th Cir. 1976) (internal citation omitted).

Plaintiff asserts two Equal Protection claims. First, plaintiff alleges that defendants discriminated against indigent inmates when they prohibited indigent inmates from photocopying self-generated materials, while inmates who are not on legal loan are not similarly restricted. Second, plaintiff claims that defendant's policy of prohibiting inmates in segregation from possessing embossed envelopes, while allowing inmates in the general population to posses such envelopes, is a violation of his Equal Protection rights.

Here, plaintiff does not assert that he is a member of a suspect class, but rather that defendants' policies irrationally discriminate against him as a member of a particular group, both as an indigent inmate, as well as a segregation inmate. While it may be argued that plaintiff, as a segregation inmate is not similarly situated to those in the general prison population, "[i]t is not the case . . . that any difference in the nature of a detainee's confinement [automatically] justifies different treatment. Sometimes detainees in different sorts of confinement are similarly situated for the purposes of the challenged policy." May, 226 F.3d at 882. Analysis of whether such differences preclude a finding that the groups

are similarly situated only can be conducted following assessment of the nature of the prison's security concerns in relation to the similarities between the two groups. Id.

To date, defendants have not devoted even a sentence in their briefs or affidavits addressing any legitimate reasons for the existence of the challenged policies. And, I am unable to hypothesize as to what those legitimate reasons may be. French, 547 F.2d at 999. Moreover, defendants have not provided any evidence from which I could analyze whether segregation inmates are similarly situated to inmates in the general prison population, or whether indigent inmates are similarly situated to non-indigent inmates for purposes of defendants' embossed envelope and photocopy claims. While this conclusion does not prevent defendants from presenting such evidence in the future, I must deny defendants' present motion for summary judgment as to these claims.

**6. Qualified Immunity**

Defendants contend that, even if plaintiff is successful on his claims, he should be precluded from recovering damages because the defendants are entitled to qualified immunity. Qualified immunity will shield defendants "from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Id. at 736 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Plaintiff alleges that defendants discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment when they denied him as a segregation inmate from possessing embossed envelopes, and as an indigent inmate by prohibiting him from using

legal loans to obtain photocopies of self-generated material. Defendants' have not provided a legitimate reason for this differential treatment, and if they fail to do so plaintiff may be successful on his equal protection claim.

When a constitutional violation is "made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the [constitutional] right was clearly established," an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. "If the law did not put the officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. This is so because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point. See McDonald v. Haskins, 966 F.2d 292, 293 (7th Cir.1992). Rather, the question is whether a reasonable state actor would have known that his actions, viewed in the light of the law at the time, were unlawful. Id. at 294.

In Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988) the Seventh Circuit established that differences in treatment among inmates in different confinement situations, without a legitimate reason, will support an equal protection claim. And in May, 226 F.3d at 882-83, the court held that the contours of this right were sufficiently clear such that qualified immunity would not protect a prison official who treated inmates differently without a legitimate reason. Thus, I conclude that a reasonable actor in defendants' positions would have known that their actions with respect to plaintiff's embossed envelope claim, if established to be unreasonable, were unlawful. Similarly, with respect to plaintiff's

photocopy claim, the Supreme Court has held that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." Britt v. North Carolina, 404 U.S. 226, 227 (1971). Although "the outer limits of that principle are not clear," id., at this point I decline to grant defendants qualified immunity on the photo copy claim.

Therefore, at this time, I deny summary judgment regarding plaintiff's embossed envelope and photocopy claims.

### 7. Dismissal of Defendant Frank

Defendants argue that I should dismiss DOC Secretary Frank because plaintiff has not demonstrated that he participated in any of the alleged unconstitutional activities. A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation or if it occurred with his knowledge or consent." Chavez v. Illinois State Police, 251 F.3d 612 (7th Cir. 2001). Here, both of plaintiff's surviving claims attack specific prison policies regarding photocopies and embossed envelopes. On the facts before me, I cannot conclude that Secretary Frank was without knowledge of these policies and decline to dismiss him from the action at this time.

## V. PLAINTIFF'S MOTIONS

Plaintiff has moved for summary judgment on all his claims. However, for the reasons set forth above, plaintiff has not demonstrated that he is entitled to judgment as a matter of law on the dismissed claims. On the remaining claims, there are issues of fact pertaining to the reasons for the challenged policies. Accordingly, plaintiff's motion for summary judgment will be denied.

On June 24, 2005, plaintiff filed a motion of objection, indicating that he desires a jury trial in this case. However, this motion is unnecessary as plaintiff already demanded a jury trial in his complaint. As such, plaintiff's motion of objection is denied as moot.

On September 20, 2005, plaintiff filed a motion of objection, alleging that he has been denied access to postage. It is unclear what plaintiff is requesting. Regardless, for the reasons discussed above, plaintiff has not established that defendants denied his constitutional right to access the courts. Lewis, 518 U.S. at 353. Accordingly, plaintiff's motion of objection shall be denied.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that defendants' motions for summary judgment (Doc. # 16 & 21) are **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that defendants' motion for leave to file excess pages (Doc. #52) is **GRANTED**.

**IT IS ALSO ORDERED** that plaintiff's motion for summary judgment (Doc. # 35) is **DENIED.**

**IT IS ALSO ORDERED** that plaintiff's motion of objection (Doc. # 45) is **DENIED**.

**IT IS ALSO ORDERED** that plaintiff's motion of objection (Doc. # 55) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2006.

/s Lynn Adelman

LYNN ADELMAN
District Judge